Our fifth case for today, now this afternoon, is United States v. Dutcher. Mr. Meier. Good afternoon. Mr. Dutcher's case, in general terms, presents a situation that has vexed courts for a long time. It presents the general question of criminalization of speech. In Mr. Dutcher's case, the particular issue is the disjunctive jury instruction given by the court defining the mens rea of the offense, defining the particular term willfulness. The court instructed the jury. Either Brian Dutcher actually intended his statement to be a true threat, which was the position of Mr. Dutcher's counsel as to the correct definition of willfulness. Or, the court then went on and said, or Dutcher knew that other people reasonably would view his statement as a true threat, but he made the statement anyway. So I have two questions for you. One of them, which you concede in your brief, is that the jury did not say that he either intended or was able to carry out his threat. That's par. And secondly, we have the Supreme Court's relatively recent decision in Elonis, which seems to approve an instruction along the lines of the second part of the instruction that you got. You're not complaining about Part 1, as I understand it. You're just complaining about Part 2. But it seems that Elonis says that that's an appropriate instruction to follow. If we really thought he was on the verge of assassinating the President, we would have charged under a different statute. Well, let me take your two questions. Number one, I did concede that they didn't have to show that he was going to carry out the threat or he had an intent to carry it out. I did that based on what the law has been in this particular circuit. That's right. So the fact that he had the slingshot, which we might think is a fairly crude David and Goliath kind of weapon, and maybe wouldn't be close enough to the President to do anything with it, isn't relevant? Well, no, that's a different question. It is relevant. It's relevant to determine, as this Court said in par, just because they don't have to prove it doesn't mean that it's not relevant, those types of facts, meaning that the circumstances in which the statement is made, all of the surrounding circumstances. So that's a different point. Okay, so it is relevant, but I'm actually not sure it's relevant, if it helps you. The jury, obviously, this jury may have wondered whether Mr. Dutcher was in full command of his senses, which is a different thing. But they seem to have said, okay, he travels from going around telling everybody who will listen to him that he thinks that the President should be killed. The jury thinks that he's made threats, real threats, against the President, true threats, whatever. Can I step back and answer the second question about Alanis? Okay, about Alanis. Okay, we can do Alanis first, because I actually think Alanis is very important for your jury instruction argument. Yes, but here's a number of issues about Alanis and its partial applicability. The two Mr. Dutcher's case. First of all, that disjunctive instruction that was given by the court that other people reasonably would view, that's not the language that Alanis used. But doesn't the addition of the word reasonably just help your client? No, because it forces him to judge what other people are thinking, an unknown universe of other people. Isn't that easier to do than asking him to judge their subjective state of mind? It's easier for a jury, but it's not easier for Mr. Dutcher. Really? Okay. It is not easier for Mr. Dutcher. Because, well, in hindsight, sure, maybe some people would view it that way. But the court in Alanis said, with knowledge that the communication will be viewed as a threat. That was the alternative. There wasn't anything about other people. There wasn't anything about reasonably in the opinion. And I obviously didn't do a good job of... Other people would view his statement as a truth threat, but made the statement anyway? No, because... Right. I figured you would probably not like it either way. Well, no, and here's why. Alanis was a different statute. Alanis didn't have an explicit mens rea. 871A has an explicit mens rea, knowingly and willfully. Alanis had no such mens rea in the statute. So the court in Alanis was presented with a situation in which silent on the question of mens rea. So what do we do? So I think that's a huge difference. Here we have, knowingly and willfully, Alanis' silence. But, you know, the other thing that I wanted you to talk about for a minute, and I'm looking at the instructions themselves, taking them as a whole, which is the way we're supposed to do it, it seems to me that the district judge touched on your theories of defense. The judge tells the jury, you know, if you think this is just idle or careless talk, political hyperbole, careless, then it's not a true threat. So the jury knows if they just think this guy says these things to get attention or whatever other reason it might impel you to say them, then they have to acquit. But they don't acquit. And then he goes on and explains all of these things, what's a true threat, what's knowingly mean, what's willfully mean, buried in the midst of willfully is the part that you're talking about. But why as a whole hasn't the judge told the jury what they needed to know? He accurately told them what a true threat was. And I don't take issue with that. As in play before the final conference, lacked all of that definition of true threat. And at least my request to include that to define true threat, the judge modified and added that. Added that for you. Okay. Okay. Here's the dynamic that's going on. The cases that have been over the years have sort of slid back and forth between what the mens rea for the offense is versus what the definition of true threat. This court in Fuller ended up talking about, well, what's a true threat? In Parr, this court in Parr, what's a true threat? But this court posed a question in Parr, which is front and center in this case. In that case, the court said, well, in light of Virginia B. Black and all these other cases, perhaps the question is whether a reasonable person under the circumstances would interpret the speaker's statement as a threat. In other words, an objective standard as to the content of the statement. And second, whether the speaker intended it as a threat. A subjective state of mind for the speaker. So the court declined to answer that question, but that's the exact position here. You bet. Objective as to the content, subjective as to his state of mind. Let me just ask you this question. Would the statements be considered true threats if Dutcher made them to someone knowing that the individual would not perceive them as a threat, yet a reasonable person would have? I don't think. Again, I think if I understand your question correctly, that the court has co-mingled the two concepts again, the slide between true threat versus his mens rea. His mens rea is limited to the question, in my viewpoint, did he subjectively intend this as a true threat? And with the disjunctive instruction that was given here, that did have an impact on his decision whether or not to testify. He did not testify in this case, and one can, with a few minutes, just think about the cross-examination of will other people reasonably interpret this. I'm sorry. It's got to be his subjective intent throughout. I'm out of time. All right. Thank you. Anything further? All right. Thank you very much. Yes, Mr. Jowers. Good afternoon. There's really, the question that's presented by the defense is whether this trial and the instructions presented a risk of somebody being convicted of otherwise innocent conduct. And I will go to the actual jury instruction and explain why not only does that comport with Alanis, but it solves any other issues that exist, especially when you interpret it as a whole. A couple of points I'd like to clarify. First, the court made a comment, and I really do need to clarify this. This was not a slingshot like Dennis the Menace. It was a wrist rocket. It's in the record, and the court can view it. He had ball bearings and other things, claimed he could take out a man with it. So I don't want to minimize that aspect, even though this court's well aware the capability of doing this is simply not an issue. The other thing that I'd like to point out is that the court made a comment about the jury having trouble with the mental state. Well, they sent a question out about can we take this into account. Right. And that jury instruction, if it's read in whole, it says one juror has a question. And then it's one juror who's saying, hey, can we take into account his mental state? In other words, something about insanity. But this was not an issue of the jury at a giant confabulation. No, I mean the only evidence we have is that one juror was thinking about this. Yeah, one juror was thinking. But they did send the question. One juror. It just wasn't there. In terms of the instruction, really what you have to remember here is that the court went beyond Alanis by importing three different or four different items into it that I think can ensure the court that there's no innocent conduct that's being punished here. The first one is that when the court deals with the second part of the disjunctive, the court says he knew. So that we're not dealing with a reasonable man's standard. It always relates back to Dutcher's specific actual intent. It's great. He knew that other people knew that something reasonable gets kind of into a chain. The second thing we know is that it has to be a true threat. And what's a true threat? It's a serious expression of the intent to do an unlawful act of violence against a particular person. So unlawfulness, he has to know that it was an unlawful act to begin with. So we know that we're protected because there's true threat when you read the instruction in the whole and the instructions there. The third thing that the court added to the Alanis instruction that it protects the defendant is that they said, well, even though he had a serious, he knew that other people reasonably would view the statement as a true threat, but he did it anyways, lets us know that by doing it anyways, we're talking about intentional, purposeful conduct so that we know that this was not just simply anything other than intentional conduct. And finally, by the reasonableness, contrary to what the defense counsel asserted, that does protect him because it narrows the range of people. It's no longer just people viewing it as a threat. It's got to be reasonable people viewing it as a threat, such that if you drew the circle of people, that's a smaller group, the reasonable people. Unfortunately, you're probably right. But the critical part is that protects the defendant. It makes it harder for the government to meet that part of the burden. The critical part here is that there's no doubt that Mr. Dutcher had to be proved that he did intentional conduct that he knew was unlawful in that second part of the disjunctive sentence. So as a result, and I won't touch on the sufficiency, not necessarily because it's not important. It is important. I think there's more than sufficient evidence here. This is not a place to reweigh the evidence that the jury reviewed, but simply that he made the statement on Facebook, made the threat, drove to La Crosse, reaffirmed the threat, always reaffirmed the threat, made additional threats while in La Crosse. There's never a point where he says, I'm joking, I'm misunderstood. It's always, yeah, I'm here. This is the real deal. I'm here to do it. And then what happens is people act. Do I remember correctly that he's taken to the hospital not at the request of the Secret Service, but the police just decided to take him there for a mental violation? That's right, under the state statute that allows that sort of... So does that mean the Secret Service thought this was just so much chatter? No, I think that the Secret Service allows the state to take the action and allows that sort of decision to take place because they're not going to, frankly, drive him to an MCC, the nearest one being here in Chicago. And I think that that really is perhaps maybe not in the record, but I think it's perhaps more of a practical matter of how things are done up in the northern part of Wisconsin. There is a simple fact here that even if there was some sort of error here in the instruction, the government truly believes it's harmless at best. All the evidence points to Mr. Dutcher making an actual intentional threat against the president. There is really nothing more than what you have to read from his own mouth in his actions that day. And so the question of whether or not this instruction, even if somehow it was an error, which the government doesn't believe it was, it's a perfectly fine instruction consistent with the case law that's come down from this circuit. The question is, is there any doubt or is there a risk that somehow, again, innocent conduct was punished here? And the government would submit that it isn't because the evidence is overwhelming that he actually made an intentional threat. And unless the court has any further questions, the government would request that you can affirm the conviction and make a jury order in this court. Thank you. All right. Thank you. Your time had run out, Mr. Meyer. If you'd like one minute to summarize, you may do that. I would like to quickly address some of the points made by opposing counsel. Number one, it's true that there was one single juror asking the particular question about Mr. Dutcher's health. However, the court should not ignore the fact that the jury then sent a two-page question to the court about various aspects of the case. The jury here deliberated almost five hours in a case in which the trial testimony of evidence took about three hours. Second, I would be remiss in not mentioning Justices Marshall's and Douglas' concurrence in Rogers v. U.S. when they examined the legislative history of 871A. And that concurrence concluded that subjective intent had to be the conclusion. Okay. Thank you. Thank you very much. And you took this case by appointment, did you not? Yes. We appreciate your help to your client and to the court. Thank you so much. Thank you, Your Honor. And thanks, of course, as well to the government. We will take the case under advisory.